J-A26038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WELLINGTON ENERGY, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CITIZENS BANK OF PENNSYLVANIA | : | No. 499 WDA 2019 |
| v. | : | |
| | : | |
| | : | |
| RAELISE OSTROWSKI | : | |

Appeal from the Judgment Entered April 5, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 13-017836

BEFORE:  SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 10, 2020**

Appellant, Wellington Energy, Inc., appeals from the judgment entered

on April 5, 2019.  We affirm.

The trial court ably summarized the underlying facts and procedural

posture of this case:

> Raelise Ostrowski, an employee of Wellington Power
> Corporation,[1] forged indorsements on [264 of Appellant's]
> checks, enabling her to steal $[375,628.62].  Ms. Ostrowski
> forged the indorsements from 2008 until she was caught in
> 2013.  Ms. Ostrowski was Wellington Power's payroll
> administrator, which made her responsible for the payroll and

---

[1] Wellington Power Corporation is Appellant's parent corporation and it
"oversees the administration, including the accounting and payroll functions,
of" Appellant.  Appellant's Complaint, 12/11/13, at ¶¶ 8-9.

"per diem" reimbursements as [Appellant's] employees replaced between eight and ten million electrical meters in the State of California. Per diem checks, typically in the amount of $1,385 or $1,551.66, reimbursed approximately [15 or 20] employees monthly for their travel related expenses, such as mileage and housing. When Ms. Ostrowski found that an employee receiving per diem reimbursements separated from [Appellant] by way of resignation, retirement[,] or termination, she would continue to have per diem reimbursement checks issued to them.

Ms. Ostrowski then forged the indorsement signatures of the former employees on the backs of the checks and deposited them via automated teller machines into her own checking accounts with Citizens Bank and PNC Bank. For example, Zack Smith ended his employment with [Appellant] in September [] 2009, but Ms. Ostrowski continued to have monthly per diem reimbursement checks issued to Zack Smith until July [] 2013, when Citizens Bank discovered that checks she was depositing had forged signature indorsements. Ms. Ostrowski was then charged with the crime of mail fraud (18 U.S.C. § 1341), [pleaded] guilty[,] and served [24] out of a [27] month prison sentence.

In September [] 2013, [Appellant] began this civil lawsuit against Citizens Bank of Pennsylvania by writ of summons, which was followed in December by a complaint. Among other things, the complaint alleged that Citizens Bank owed [Appellant] $366,485.32 for failing to exercise ordinary care by accepting deposits into Ms. Ostrowski's account of checks made payable to other individuals that contained forged indorsements. Citizens Bank joined Ms. Ostrowski as an additional defendant, alleging she should indemnify or contribute towards any liability of Citizens Bank to [Appellant]. . . .

In December [] 2017, the Honorable [Paul F. Lutty, Jr.] granted Citizens Bank's motion for partial summary judgment by prohibiting [Appellant's] claims arising from all checks in bank statements made available to [Appellant] in July [] 2012 or earlier. Judge Lutty's ruling left intact [Appellant's] claims [related to the] forged checks deposited between August [] 2012 and July [] 2013.

- 2 -

The dispute over the reduced amount of $109,581.66 was assigned to [the trial court judge, the Honorable Alan Hertzberg,] for resolution by way of a jury trial. After a trial of approximately three days, Citizens Bank withdrew its claim against Ms. Ostrowski. On [Appellant's] claims against Citizens Bank, the jury returned a verdict in favor of Citizens Bank. [Specifically, the jury found that Citizens Bank did not fail to exercise ordinary care in this case. *See* Jury Verdict, 11/30/18, at 1.]

Trial Court Opinion, 6/4/19, at 1-3 (footnotes and some capitalization omitted).

Following the denial of Appellant's post-trial motion, Appellant filed a notice of appeal. Appellant raises three claims on appeal:

1) Did the [trial] court err when it applied the facially inapplicable provisions of 13 Pa.C.S.A. § 4406(f) to grant partial summary judgment and, thereby, to limit the scope of [Appellant's] claims to a one-year lookback period?

2) Did the [trial] court err in permitting [Citizens Bank] to introduce as evidence customer agreements between other banks and their customers which were irrelevant, hearsay, unauthenticated, misleading and highly prejudicial?

3) Did the [trial] court err in not granting a mistrial or providing a limiting instruction when [Citizens Bank] made references to [Appellant's] claims against [PNC Bank] in closing arguments in violation of [the trial court's] order on [Appellant's] pretrial motion *in limine*?

Appellant's Brief at 4 (some capitalization omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinions of the able trial court judges, the Honorable Paul F. Lutty, Jr. and the Honorable Alan Hertzberg. We conclude that Appellant is not entitled to relief in this case, for reasons partially

expressed in Judge Lutty's June 6, 2019 opinion[2] and fully expressed in Judge

Hertzberg's June 4, 2019 opinion.  Therefore, we affirm on the basis of Judge

_____

[2] Appellant claims that, in granting Citizens Bank's motion for partial summary judgment, Judge Lutty erred by "limit[ing] the scope of [its] claims to a one-year lookback period."  Appellant claims that this error caused it prejudice because, during trial, Citizens Bank defended the action by pointing out "the long duration of the fraud" and by faulting Appellant for failing to catch the fraud earlier.  Appellant's Brief at 34-36.  According to Appellant:

> the wrongly-limited look-back period permitted the jury to consider [Citizens Bank's] liability only for the final year – after Ms. Ostrowski's conduct had been continuing for years. In a trial without the prejudice of the one-year look-back period, the jury would consider [Citizens Bank's] conduct looking back to 2008, which would have considerably altered the jury's weighing of the claims and evidence.

*Id.* at 35-36.

If Appellant is claiming that it suffered prejudice because the summary judgment ruling limited its ability to present evidence related to events that occurred before the one-year look-back, this claim fails.  To be sure, Judge Lutty's summary judgment ruling only limited Appellant's potential damages in this case – it did not limit the evidence that the parties were permitted to introduce.  Indeed, at the beginning of the trial, Appellant's attorney informed the trial court:

> Yes[, Your Honor].  As [Citizens Bank's attorney] said to Your Honor, **while we are going to tell the facts going back to the beginning of the fraud**, we're only seeking damages and only mentioning specific damages for the 79 checks in the one-year look-back period consistent with Judge Lutty's order.
>
>                                     . . .
>
> We're not going to make an argument that, gee, we're entitled to [$]400,000, but we can only get [$]109,000.  We understand it's [$]109,000] per Judge Lutty's Order.

- 4 -

Lutty's and Judge Hertzberg's thorough opinions and adopt them as our own.

In any future filing with this or any other court addressing this ruling, the filing

party shall attach a copy of Judge Lutty's June 6, 2019 opinion and Judge

Hertzberg's June 4, 2019 opinion.

Judgment affirmed.

---

> I think both parties will be talking about the conduct over four or five years, but we will not ask for damages more than [$109,000], whatever the stipulated amount is.

N.T. Trial, 11/27/18, at 22 (emphasis added).

Further, in this case, the jury specifically found that Citizens Bank did not fail to exercise ordinary care. *See* Jury Verdict, 11/30/18, at 1. Therefore, since the summary judgment order only limited the potential damages that Appellant could receive and since the jury found that Appellant was not entitled to damages in this case, even if the summary judgment order were erroneous, Appellant did not suffer any prejudice as a result of the error and it is not entitled to relief on appeal.

If, on the other hand, Appellant claims that the summary judgment ruling caused it to suffer prejudice because the ruling caused the jury to not "weigh[] Citizens [Bank's] conduct of allowing these fraudulent ATM deposits for years against [Appellant's] conduct," this claim also fails. *See* Appellant's Reply Brief at 9-10. This claim of prejudice would only be relevant as to the amount to which Appellant's failure to exercise ordinary care contributed to its loss. Here, however, the jury simply found that Citizens Bank did not fail to exercise ordinary care. Therefore, and again, the summary judgment ruling did not prejudice Appellant.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2020

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

WELLINGTON ENERGY, INC.,

    Plaintiff,

    vs.

CITIZENS BANK OF PENNSYLVANIA,

    Defendant.

    vs.

RAELISE OSTROWSKI,

    Additional Defendant.

CASE NO. GD 13-17836

Superior Court docket no. 499 WDA 2019

**OPINION**

JUDGE ALAN HERTZBERG

COPIES SENT TO:

COUNSEL FOR PLAINTIFF:

PATRICK CAVANAUGH, ESQUIRE
3 PPG PLACE, SUITE 600
PITTSBURGH, PA 15222

COUNSEL FOR DEFENDANT:

KEVIN ALLEN, ESQUIRE
US STEEL TOWER
600 GRANT STREET, 44TH FLOOR
PITTSBURGH, PA 15219

RAELISE OSTROWSKI
517 POLAND AVENUE
STRUTHERS, OH 44471

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

WELLINGTON ENERGY, INC.,

      Plaintiff,

      vs.

CITIZENS BANK OF PENNSYLVANIA,

      Defendant.

      vs.

RAELISE OSTROWSKI,

      Additional Defendant.

CASE NO. GD 13-17836

Superior Court docket no. 499 WDA 2019

## OPINION

Alan Hertzberg, Judge            Date Filed: June 3, 2019

Raelise Ostrowski, an employee of Wellington Power Corporation, forged indorsements on two hundred eighty-eight of Wellington Energy, Inc.'s checks, enabling her to steal $406,598.60.[1] Ms. Ostrowski forged the indorsements from 2008 until she was caught in 2013. Ms. Ostrowski was Wellington Power's payroll administrator, which made her responsible for the payroll and "per diem" reimbursements as Wellington Energy's employees replaced between eight and ten million electrical meters in the State of California. Per diem checks, typically in the amount of $1,385 or $1,551.66, reimbursed approximately fifteen or twenty employees monthly for their travel related expenses, such as mileage and housing. When Ms. Ostrowski found that an employee receiving per diem reimbursements separated from Wellington by way of resignation,

---

[1] Wellington Energy Inc. is a wholly owned subsidiary of Wellington Power Corporation.

1

retirement or termination, she would continue to have per diem reimbursement checks issued to them.

Ms. Ostrowski then forged the indorsement signatures of the former employees on the backs of the checks and deposited them via automated teller machines into her own checking accounts with Citizens Bank and PNC Bank. For example, Zack Smith ended his employment with Wellington Energy in September of 2009, but Ms. Ostrowski continued to have monthly per diem reimbursement checks issued to Zack Smith until July of 2013, when Citizens Bank discovered that checks she was depositing had forged signature indorsements. Ms. Ostrowski was then charged with the crime of mail fraud (18 U.S.C. §1341), pled guilty and served twenty-four out of a twenty-seven month prison sentence.

In September of 2013, Wellington Energy began this civil lawsuit against Citizens Bank of Pennsylvania by writ of summons, which was followed in December by a complaint. Among other things, the complaint alleged that Citizens Bank owed Wellington Energy $366,485.32 for failing to exercise ordinary care by accepting deposits into Ms. Ostrowski's account of checks made payable to other individuals that contained forged signature indorsements. Citizens Bank joined Ms. Ostrowski as an additional defendant, alleging she should indemnify or contribute towards any liability of Citizens Bank to Wellington Energy. In December of 2017, the Honorable Judge Paul Lutty granted Citizens Bank's motion for partial summary judgment by prohibiting Wellington Energy's claims arising from all checks in bank statements made available to Wellington Energy in July of 2012 or earlier. Judge Lutty's ruling left intact Wellington Energy's claims from forged checks deposited between August of 2012 and July of 2013.

2

The dispute over the reduced amount of $109,581.66 was assigned to me for resolution by way of a jury trial. After a trial of approximately three days, Citizens Bank withdrew its claim against Ms. Ostrowski. On Wellington Energy's claims against Citizens Bank, the Jury returned a verdict in favor of Citizens Bank. Wellington Energy then filed post-trial motions that requested a new trial due to errors allegedly made by Judge Lutty and I. After I denied the post-trial motions, judgment was entered on the verdict and Wellington Energy filed a timely appeal to the Superior Court of Pennsylvania. Wellington Energy also filed a timely concise statement of matters complained of on appeal. With the exception of the claim of error by Judge Lutty for granting partial summary judgment,[2] I address each alleged error below.

Wellington Energy contends that I erroneously permitted Citizens Bank "to introduce as evidence customer agreements between other banks and their customers which were irrelevant, hearsay, unauthenticated, misleading and highly prejudicial."[3] These customer agreements are relevant because of the Pennsylvania Uniform Commercial Code provisions that specify whether the employer or the depositary bank has civil liability for an indorsement forged by an employee. See 13 Pa. C.S.§§3405 and 3103. The depositary bank will only be liable if, in taking a check for processing by automated means, it fails to exercise "ordinary care," which is defined as "observance of reasonable commercial standards, prevailing in the area ... .[which] do not require the bank to examine the instrument if the failure to examine does not ... vary unreasonably from general banking usage...." Id. The customer agreements of Dollar Bank and Bank of America show those banks use the same procedure as Citizens Bank, which is to

---

[2] See ¶ no. 1 in the concise statement of matters complained of on appeal. Judge Lutty will file an opinion addressing the claim of error in his granting partial summary judgment.

[3] See ¶ no. 3 in the concise statement of matters complained of on appeal.

3

perform no sight examinations of automated teller deposits (unless a check is for a very large amount). While I prohibited the admission of customer agreements from Huntingdon and Citibank from 2018,[4] the Dollar Bank and Bank of America customer agreements were from the appropriate time frame and therefore relevant to show whether Citizens Bank used similar standards in not examining the checks deposited by Ms. Ostrowski. Hence, the customer agreements with other banks were admissible and not irrelevant.

Concerning Wellington Energy's argument that the customer agreements with other banks were hearsay, Pennsylvania Rule of Evidence no. 801(c)(2) excludes evidence not offered "to prove the truth of the matter asserted" from the definition of hearsay. The customer agreements with Dollar Bank and Bank of America clearly were not offered to prove the truth of what the banks and their customers had agreed upon. Instead, they were offered to show that a Pittsburgh metropolitan area bank and a large national bank handle automated teller machine deposits the same way as Citizens Bank. See testimony of expert witness Cathy Glassman in the transcript of Jury Trial, Volume II, pp. 515-516, 520-522 and 534-539. Therefore, the customer agreements between other banks were not inadmissible on the basis of hearsay.

Wellington Bank's argument that the customer agreements with other banks were unauthenticated is resolved by Pennsylvania Rule of Evidence no. 901(a). The rule allows the authentication requirement to be satisfied by the production of "evidence sufficient to support a finding that the item is what the proponent claims it is." Citizens Bank, the proponent, claimed the customer agreements with Dollar Bank and Bank of America

---

[4] Counsel for Wellington Energy described the objection to the time frame of the Huntingdon and Citibank customer agreements, which I sustained, as "probably the most critical objection." Transcript of Jury Trial, Volume II, p. 523.

4

were documents that were made publicly available by those banks. See transcript of Jury Trial, Volume II, pp. 521 and 535. Citizens Bank's expert witness, Cathy Glassman, testified from her personal knowledge that these customer agreements were made publicly available by those banks, which testimony I found credible. Id. Since testimony of a witness with knowledge that an item is what it is claimed to be satisfies the authentication requirement (see Pennsylvania Rule of Evidence no. 901(b)(2)), the customer agreements with other banks were authenticated.

Wellington Energy's final argument on the customer agreements with other banks is that they are inadmissible because they are misleading and highly prejudicial. However, the purpose for which they were admitted, to show other banks did not perform any sight examination of checks deposited by automated teller, was acknowledged as correct by Wellington Energy's expert witness, Alan Slater, and its counsel. See transcript of Jury Trial, Volume II, pages 420-428 and 531-532. Since Wellington Energy clearly agrees other banks had the same practice of not sight reviewing checks deposited by automated teller machine, there is no merit to its argument that admission of the other banks' customer agreements was misleading and highly prejudicial. In addition, this agreement by Wellington Energy that other banks do not conduct sight examination of checks deposited by automated teller machines would make any error in the admission of the other banks' customer agreements harmless.

The other trial error Wellington Energy contends I made allegedly occurred during Citizens Bank's closing argument. Wellington Energy contends Citizens Bank violated my order granting a pre-trial motion in *limine* but I erroneously refused to give

5

the jury a limiting instruction or declare a mistrial.[5] The origin of this alleged error is Ms. Ostrowski's successful deposit into her own checking account with PNC Bank, via automated teller machine, of six Wellington Energy checks with forged indorsements. This led Wellington Energy to initiate another civil lawsuit against PNC Bank via a writ of summons filed at docket no. GD 14-23256. Six days before the trial started, Wellington Energy served Citizens Bank with a motion in *limine* to exclude all evidence of Ms. Ostrowski depositing checks into her PNC Bank checking account as well as the lawsuit filed by Wellington Energy against PNC Bank. See entry no. 52 filed 11/30/2018 in the Department of Court Records docket.

Wellington Energy argued in the motion in *limine* that the mention of another bank and another lawsuit could confuse the issues or mislead the jury (see Pennsylvania Rule of Evidence no. 403) to view Wellington Energy "as a frequent litigant or believe that Wellington will recover funds from another entity." Motion in *limine*, ¶ no. 33. After on-the-record argument of the motion, I signed an order that prohibited reference to the lawsuit against PNC Bank but permitted evidence of the deposit of the checks into Ms. Ostrowski's PNC Bank checking account. During the trial, Wellington Energy expert Alan Slater testified that Citizens Bank decided sight examination of automated teller deposits would be more expensive than accepting responsibility when a check with a forged indorsement is deposited into an account bearing a name different than the payee on the check. Mr. Slater further testified that the failure of Citizens Bank to accept responsibility, by paying Wellington Energy for its losses that sight examination would have prevented, violated banking industry standards. See transcript of Jury Trial, Volume II, pp. 447-453. On cross examination, Mr. Slater testified that he would expect

---

[5] See ¶ no. 2 in the concise statement of matters complained of on appeal.

6

PNC Bank to be in the same position as Citizens Bank and also accept responsibility for not conducting sight examinations of automated teller deposits. The cross examination continued as follows:

> Q.   So you would expect PNC to have paid out on a claim to Wellington; right?
> A.   I would have expected that they would or considering it's in a big binder, I'm assuming they're suing also.
> Q.   Do you know if PNC has done that, sir?
> A.   I have no idea.

Id., p. 473.

Throughout the trial, there was no testimony or other evidence produced by Wellington Energy that PNC Bank had followed what Mr. Slater testified was a banking industry standard by reimbursing Wellington Energy for the six checks Ms. Ostrowski deposited into her PNC Bank account. Hence, in the closing argument, Citizens Bank pointed out the lack of evidence supporting Mr. Slater's testimony that it was industry practice to pay back losses from fraudulent automated teller machine deposits. Its counsel told the jury Mr. Slater failed to identify any specific bank that has a practice of paying back losses from fraudulent automated teller machine deposits and that there was no evidence introduced that PNC Bank paid Wellington Energy for the six checks deposited into Ms. Ostrowski's PNC Bank account. See Id., pp. 743-752.

My ruling on the motion in *limine*, comprised of language proposed by Wellington Energy, states:

> "No party may refer to the lawsuit filed by Plaintiff against PNC Bank in the Court of Common Pleas of Allegheny County, Pennsylvania at docket number GD 14-023256."

Entry no. 54 filed 12/03/2018 in the Department of Court Records docket. While Wellington Energy alleges Citizens Bank violated this ruling, I disagree. There was no

7

reference to the lawsuit against PNC Bank made during Citizens Bank's closing argument. Wellington Energy's witness, Mr. Slater, spoke the only words that might be construed to reference a lawsuit against PNC Bank during the exchange quoted above. Then, Citizens Bank's counsel scrupulously observed my ruling by not delving into the PNC Bank lawsuit, but instead asking only if Mr. Slater knew if PNC had paid Wellington Energy. Additionally, the premise for my ruling on the motion in *limine* was not to confuse or mislead the jury to view Wellington Energy as a frequent litigant or believe it will recover funds from an entity other than Citizens Bank, and there was no testimony or argument to that effect. Indeed, Citizens Bank did not violate my ruling on the motion in *limine*. Therefore, I correctly denied Wellington Energy's request for a mistrial or a limiting instruction.

BY THE COURT:

_____, J.

8

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

Wellington Energy, Inc.,

      Plaintiff,

vs.

Citizens Bank of Pennsylvania,

      Defendant,

vs.

Raelise Ostrowski,

      Additional Defendant.

CIVIL DIVISION

No. GD 13-17836

**OPINION**

HON. PAUL F. LUTTY, JR.

Copies Sent Via First-Class Mail to:

Patrick K. Cavanaugh, Esquire
William S. Stickman, IV, Esquire
Del Sole Cavanaugh Stroyd LLC
3 PPG Place
Suite 600
Pittsburgh, PA   15222

Kevin P. Allen, Esquire
Eckert Seamans Cherin & Mellot LLC
600 Grant Street
44th Floor
Pittsburgh, PA   15219

Raelise Ostrowski
517 Poland Avenue
Struthers, Ohio   44471

FILED
19 JUN -6 AM 9: 25
DEPT OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

ORIGINAL

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

Wellington Energy, Inc.,

Civil Division

Plaintiff,

v.

No. 13-17836

Citizens Bank of Pennsylvania,

Defendant.

v.

Raelise Ostrowski,

Additional Defendant.

LUTTY, JR., J.

**OPINION**

In the Concise Statement of Matters Complained of on Appeal, Appellant, Wellington Energy, Inc., (Wellington), Plaintiff below, includes and extends the Complaints attributed to the Trial Judge, adding an issue on Appeal attributed to this General Argument Judge, Paul F. Lutty, Jr., who heard Argument on Defendant Citizen's Motion for Partial Summary Judgment on December 11, 2017. Appellant contends the following;

1. Did the Court err wen it applied the facially inapplicable provisions of 13 Pa. C.S.A., Section 4406(f), to grant partial Summary Judgment and, thereby, to limit the scope of Wellington's claims to a one year lookback period?

1

ANSWER:    Judge Lutty properly applied the provisions of 13 Pa.C.S.A. Section 4406(f) to afford Defendant/Appellee Citizen's a defense to Wellington's claims against Citizens Bank, as asserted in the Complaint.

## ANALYIS

From July 19, 1999, until June 24, 2013, Wellington employed Raelise Ostrowski, as a secretary, payroll administrator and executive assistant.  Beginning in 2009, Ostrowski fraudulently issued checks from Wellington to former Wellington employees, in the course of her normal duties in processing per diem payments.  Until July of 2013, Ostrowski issued approximately 258 checks to ex-employees to be drawn from Wellington's bank account at First Niagra Bank.

Ostrowski then endorsed the checks and deposited them into her personal account in either Citizens or PNC Bank via automated teller machines (ATMs).  Citizens forwarded checks to First Niagra for payment.  First Niagra honored the checks and debited Wellington's account for the checks.  Although Wellington's loss was attributed to First Niagra's payment of the checks, as well as Wellington's failure to supervise Ostroski, safeguard its checks, and review and timely report any unauthorized activity associated with its bank account, Plaintiff, in its Complaint, sought to shift responsibility for the above negligence and Ostrowski's criminal conduct to Appellee citizens.

In late July of 2013, Citizens discovered and reported the suspicious activity to Plaintiff's employee, Mr. Huber, Ostrowski's supervisor.  Huber testified that Ostrowski deposited $370,000.00 into her Citizens Bank account and $37,000.00 into her PNC account.  Although Huber was responsible for reviewing and reconciling Wellington's account statements

2

and evaluating all of its transactions, he never discovered that Ostrowski had issued checks to persons who no longer worked for Wellington. When contacted by Citizens in July of 2013, Huber informed Citizens that Wellington had not authorized any checks flagged by Citizens as suspicious. At a meeting, Ostrowski admitted to her fraudulent check scheme and pled guilty and was sentenced.

Wellington filed claims against both depositor banks. It included claims of conversion against Appellee under 13 Pa. C.S.A. Section 3420, Fictitious Payee under 13 Pa.C.S.A, Section 3404(d), Payment for Frudulent Indorsement under 13 Pa.C.S. Section 3405 (b) and Breach of Presentment Warranty under 13 Pa.C.S. Section 3417. After pleadings were closed and discovery was taken, Citizens moved for Partial Summary Judgment, citing the notice period under Section 4406(f), which is precedent to an action in Pennsylvania, which unlike a statute of limitations, cannot be tolled, Bucci v. Wachovia Bank,N.A., 591 F. Supp. 2d 773 (E.D. Pa. 2008). Once the bank fulfilled its requirement of providing customer with a sufficiently informative statement, the customer has one year to provide bank with notice of alteration, regardless of whether alteration was reasonably diphererable. Environmental Equipment and Service Company v. Wachovia Bank, N.A., 741 F. Supp. 2d 705 (E.D. Pa. 2010).

Appellant agued in response to Citizen's Motion that only customers of their own bank are bound to discover and report fraudulent transfers within one year of receipt of their bank's statement. Appellant had examined the statements of First Niagra, between 2009 and July of 2013, and failed to discover any inconsistencies or suspicious transactions. Appellant did not file claims against First Niagra for its failure to discover any suspicious transactions before payment, perhaps realizing that their claims against First Niagra would have been limited to transactions between July of 2012 and July of 2013. Nevertheless, it would surely frustrate the policy of the

UCC to encourage customers to promptly examine their account statements and timely notify the drawee bank of forgeries and alterations within one year if courts permitted customers/drawers to circumvent the obligations imposed upon them by Section 4406 by pursuing claims directly against depository banks after the expiration of the one year limitation precluded if asserted against the payor bank.

As Wellington argued in its Motion, the UCC seeks to discourage fraud by allocating losses to the party whose negligence allowed the scheme to succeed or was in the best position to prevent the occurrences. Menichine v. Grant, 995 F.2d 1224, 1234 (3d Cir. 1993). The application of Section 4406(f) to claims against depository banks is in harmony with the UCC's intent to, where appropriate, allocate loss between the drawer, drawee/payor bank and the depositor bank. Wellington's argument ignores various authorities, including the UCC itself, that support the position that the Section 4406 defenses are fully available to depository banks, such as Appellee Citizens 13 Pa. C.S.A. Section 3417(c) permits defenses to breach of presentation of warranty as alleged here and the warrantor, such as Citizens may defend by proving that for example, the indorsement is effective under Section 3404, relating to imposters, fictitious payee or 3405, employer's responsibility for the fraudulent indorsement by employee or the drawer is precluded under section 3406 relating to negligence contributing to the forged signature or alteration of the instrument or 4406 relating to the duty of the customer to discover and report unauthorized signatures or alterations within one year.

Comment 6 to Section 3417 C states as follows:

6. Subsection C applies to checks and other unaccepted drafts. It gives the warrantor the benefit of rights that the drawee has against the drawer under Sections 3404, 3405,

4

3406 or 4406. If the drawer's conduct contributed to a loss from a forger or altercation, the drawer should not be allowed to shift the loss from the drawer to the warrantor.

Therefore, under Pennsylvania law, the depository bank, as the warrantor may raise any defense against drawers that are otherwise available to the drawee, which paid checks presented with forged indorsements. Nisenson v. Morgan Stanley DW, Inc., 546 F. Supp. 2d 213(E.D. Pa. 2008).

Thus, under Pennsylvania law, Citizens can raise any defense First Niagra could have raised had Wellington pursued any claims against them. The law preserves the UCC's intent to properly and fairly allocate the loss between the drawer, the drawee/payor bank and the depository bank.

After considering the parties Motions, Briefs and Argument thereon for and against the application of the one (1) year notice requirement, this Court found in favor of Defendant/ Appellee, Citizens Bank.

Of course, this Court's decision was based solely on the proper application of the law and made no conclusions as to which party was in the best position to detect the fraud. As Wellington argued, "Finally, the determination of who was in the best position to detect the fraud at issue is highly fact intensive and can only be resolved by the jury". See Wellington Brief in opposition to Motion for Partial Summary Judgment.

On November 30, 2018 the jury found unanimously that Citizens did not fail to exercise ordinary care with respect to the checks deposited by Ostrowski into her Citizen's account via Citizens automated teller machines.

5

In conclusion and for the foregoing reasons, Third Circuit Court's Order dated December 11, 2018 barring Wellington's claims based on checks appearing on bank statements made available to Wellington in July 2012 or earlier should be affirmed.

By the Court:

Dated: 6-5-19